RECEIVED

FEB 05 2024

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

United States District Court
for the
Western District of Pennsylvania

Plaintiff,
Stephen Parker

Case No: 2;23-CV-01654-CRE

v.

Amended Complaint

Defendant(s),

Civil Rights Complaint

see attached

Pursuant to 42 USC § 1983

## Jurisdiction

This complaint alleges that the civil rights of plaintiff, Stephen Parker who presently resides at SCI Dallas, 1000 Follies Rd. Dallas PA. 18612, were violated by the actions of the below-named individuals, between October 2018 - May 2021. This court has Jurisdiction over this Complaint pursuant to 28 USC §§ 1331 and 1343, and plaintiffs claim(s) are authorized by 42 USC § 1983. While the defendants all maintain an address at their principle office: 1920 Technology Parkway, Mechanicsburg PA. 17050, their Sub-Address is located in this District.

Parties to the complaint

Plaintiff:   Stephen Parker, prose

V.

Defendants:   Laurel Harry (Secretary of corrections)

George Little (former Secretary)

John Wetzel (former Secretary)

Christopher Oppman (Regional Deputy Secretary)

Trevor Wingard (former Regional Deputy Secretary)

Lucas Malishchak (Director of Psycology)

E. Tice (Facility Manager - SCI Somerset)

M. Houser (DSCS - SCI Somerset)

M. Pyle (CCPM - SCI Somerset)

J. Liller (Major - SCI Somerset)

R. Snyder (Major - SCI Somerset)

M. Brothers (Capt - SCI Somerset)

Turner (Security Lt - SCI Somerset)

Henderson (Unit Manager - SCI Somerset)

Shearer (Counselor - SCI Somerset)

C. Schenck (Grievance Coordinator - SCI Somerset)

R. Gilmore (former Facility Manager - SCI Greene)

M. Zaken (Facility Manager - SCI Greene)

Buzas (DSFM - SCI Greene)

Switzer (Major - SCI Greene)

M. Malanoski (Major - SCI Greene)

P. Kennedy (Capt - SCI Greene)

Johnson (CSP - SCI Greene)

Weeden (Psycologist - SCI Greene)

P. Braunlich (Lt - SCI Greene)

A. Gumbarevic (STGMU, Unit Manager - SCI Greene)

R. McCumbie (Unit Manager - SCI Greene)

S. Longstrength (Unit Manager - SCI Greene)

T. Richards (Unit Manager - SCI Greene)

M. Gunton (Unit Manager - SCI Greene)

J. Suganda (Unit Manager - SCI Greene)

Coulehan (STGMU Counselor - SCI Greene)

Pluck (STGMU Sgt - SCI Greene)

Stillwagen (Corrections officer - SCI Greene)

Phillips (Corrections officer - SCI Greene)

Estle (Corrections officer - SCI Greene)

Cole (Corrections officer - SCI Greene)

Hansaken (Corrections officer - SCI Greene)

C. Greenawalt (Grievance Coordinator - SCI Greene)

T. Shawley (Grievance Coordinator - SCI Greene)

M. Howells (Grievance officer - SCI Greene)

Kulik (Grievance officer - SCI Greene)

Tina Walker (Facility Manager - SCI Fayette)

Eric Armel (former Facility Manager - SCI Fayette)

M. Capozza (former Facility Manager - SCI Fayette)

J. Trempus (DSFM - SCI Fayette)

S. Manky (Major - SCI Fayette)

P. Aurandt (STGMU, UM - SCI Fayette)

C. Disalvo (Grievance officer - SCI Fayette)

R. House (Grievance Coordinator - SCI Fayette)
keri Moore (Chief Grievance Officer - Central Office)
D. Varner Chief Grievance Officer - Central Office)
B. Rudzieski Hearing Examiner - Central Office)
Z. Moslak (Chief Hearing Examiner - Central Office)

Each defendant is sued individually, and in their official capacity, as each defendant acted under the color of state law.

## I.   Introduction and Summary of Complaint(s)

1. Prison officials throughout the Pennsylvania Department of Corrections (PADOC) have implemented and been abusing various treatment programs such as the "Security Threat Group Management Unit" (STGMU), to place people in the Restricted Housing Unit (RHU), also known as Solitary Confinement, through an unconstitutional process that takes no account of - and exacerbates - their Mental Health and violates their First, Fourth, Eighth, and Fourteenth Amendment(s) to the United States Constitution, as well as the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act (RA), which requires public entities, including state prisons, to provide, in all of their programs, services, and activities, reasonable accommodation to individuals with disabilities.

2. The plaintiff was denied complete Due Process, prior and after, when he was arbitrary placed into the STGMU, where adequate programing, program treatment specialist, Social Workers, Mental Health Care, Cognitive Behavior Therapy, Groups, Religious Services, and Educational and Rehabilitative Programs fail to exist.

3. Plaintiff was locked in extremely small cell for 23 hours a day, and was only permitted to leave the cell for a 1 hour of exercise in the restricted yard area known as the "Dog cage" or "Kennel." However, to participate in the 1 hour exercise, the plaintiff had to undergo an invasive strip search where he had to lift and shake his genitalia... bend over, spread his buttocks so that the officer may look at his plaintiff's anus, than made to squat and cough before being handcuffed behind his back and chained to a leash before being escorted to the "dog cage." This procedure was imployed whenever,

and for whatever reason, plaintiff exited or return to his cell.

4. Plaintiffs prolonged and unjust isolation in Solitary Confinement under these extremely harsh conditions caused him irreversible damage to his physical and mental health. Specifically, the lack of movement caused plaintiff to develope back problems and deteriorate physically. Plaintiff also has an extensive history of servere anxiety, depression, paranoia, bipoler and mood-swings, hallucinations and PTSD, all of which were exacerbated by plaintiffs placement in long-term solitary confinement.

5. Whenever plaintiff would file a Request to Staff, Grievance, or appear at a periodic review, and raise his concern(s) involving the endless hardships and constitutional violations occurring in the name of programing, the defendants would retaliate and continue in their Campaign of Harrassment by way of fabricating Misconduct charges which led to bias hearings and unjust Phase Freezes, or set-backs, and "rubber stamp" reviews. Throughout plaintiffs duration on the STGMU, the defendants had the "authority and ability" to change their practices but deliberately chose not to do so, choosing instead to intentionally ignore past, and encourage future constitutional violations.

6. The defendants are "deliberately indifferent" to the fact that the STGMU's treatment, or lack thereof, is being used as a smoke-screen to unjustly place people in long-term solitary confinement, knowing that the practice of placing plaintiff in long term segregation can cause grave harm to his Mental and Physical Health in violation of the 8th Amendment.

2

II.  The defendant(s) Retaliated against the plaintiff and deliberately violated his right to Due Process when they placed him in the STGMU.

7. The 14th Amendment of the US Constitution, prohibits the deprivation of Procedural Due Process.

8. On 12/27/18, Captain Thomas and c.o. Croyle, granted plaintiff a "Time Cut" and issued Other Report #D055412, placing him on AC status pending transfer. The plaintiff was verbally told he would not be released from the Restricted Housing Unit (RHU), that he was being transferred and placed into a Security Threat Group Management Unit ("STGMU"). The plaintiff immediately began sending Request to Staff to both the Facility Manager (FM)- E. Tice, and the members of the Program Review Committee (PRC), "objection" to such placement.

9. On 1/3/19, the plaintiff appeared before PRC- M. Houser (PSCS), J. Tiller (Major), and M. Pyle (CCPM), and continued his objection to such placement. In response, PRC claimed the Other Report (supra) was issued in error and rein-stated plaintiffs remaining DC time. PRC stated that if Central Office approved placement in an STGMU, as there was no guarantee such place-ment would be, the plaintiff would be able to appeal that decision. Despite plaintiffs inquiry, PRC refused to provide or state the reason(s) the plaintiff was being recommended for an STGMU. Plaintiff was told it was merely a Referral and if accepted, the plaintiff would be able to appeal and address any issues or concern(s) he may have.

3

10. On 2/7/19, plaintiff again appeared before PRC-M. Houser, R. Snyder (Major), and M. Brothers (Captain), and informed them his Due Process was being violated, that DC-ADM 802, Section(s) 2. A.; and 2. D(8); state reason(s) for Specialized Programing (STGMU) shall be provided to the plaintiff and documented on a DC-141, Part 4. Despite being provided and notified of said policy and procedure, the defendants continued to deny the plaintiff a reason and told him not to worry, that it was only a Referral. The defendants DC-141, Parts 3 and 4, make no mention of plaintiff's request, issues, or concerns. They are so vague and one-sided that they alone are sufficient to establish the Retaliation and Due Process violation that occurred.

11. On 2/12/19, the plaintiff submitted grievance #786599, explaining how his Due Process was being violated and the defendants were attempting to have him placed in an STGMU in retaliation. Despite DC-ADM 804, Section 1. C. (3), prohibiting his involvement, PRC member-M. Houser, was assigned to answer and resolve the grievance. Instead, the defendant deliberately ignored the facts being presented and claimed the plaintiff was informed of his appeal rights but he did not inquire about appeal procedures with PRC and denied relief. The plaintiff appealed to the FM-E. Tice, and pointed to specific facts, such as how his section of the DC-141, Part 4, was incomplete. Rather than investigate, the defendant furthered the Due Process violation by simply adopting the initial response and denying the plaintiff's grievance. Despite DC-ADM 804, Section 2. D. (12), the Chief Grievance Officer-Keri Moore, than ignored the facts being presented, claimed plaintiff's claim(s) could not be reviewed through the 804 policy and denied relief, denying the plaintiff a fair and proper review at the Final Level.

4

12. The plaintiff asserts he is unaware of what process, or evidence the defendants used to arbitrarily validate him as an STG member and have him placed in an STGMU, which is an 18 month "program" that strips inmates of all their liberties and places them in Long-Term Solitary Confinement under extreme conditions that create an Atypical and Significant hardship(s) in relation to the ordinary incidents of prison life.

13. Unlike other Specialized Programing, the STGMU is governed by DC-ADM 6.5.1, exclusively. This secret-mysterious policy is not allowed to be reviewed by the plaintiff, or even the public. With that said, Due Process is warranted.

14. The plaintiff was recommend and arbitrarily placed in the STGMU without any access or viewing of its policy, denying him the information needed to adequately understand or challenge his placement, which violated his Due Process and ultimately posed a substantial risk to his physical and mental health in violation of the 8th Amendment.

15. The defendants have and continue to be, Deliberately Indifferent to the effects of the DOC policy and practices with the STGMU through hundreds of grievances and Request to Staff filed by the plaintiff and similarly situated individuals.

16. As a direct result of the defendants retaliatory acts and omissions, the plaintiffs 8th and 14th Amendment has, is, and will continue to be violated.

5

III.    The defendant(s) violated the plaintiff's 8th and 14th Amendment when they deliberately and erroneously, placed him on Phase 5 of the STGMU.

17. The 8th Amendment of the US Constitution, prohibits Cruel and Unusual Punishment, and Due Process is secured by the 14th Amendment.

18. On 2/21/19, plaintiff was transferred and arbitrarily placed in the STGMU (Claim III), without ever receiving a notice or decision from Central Office regarding the STGMU Referral, which effectively denied the plaintiff the opportunity to appeal and challenge STGMU placement.

20. The plaintiff immediately realized the STGMU was being used as a smoke-screen to justify Long-Term Solitary Confinement, and house, restrict, and inflict a variety of hardships in violation of the 1st, 4th, 8th, and 14th Amend.

21. The defendants required the plaintiff to serve every day of his Disciplinary Custody (DC) sanction before placing him on AC status and admitting him to the STGMU. There, the defendants placed the plaintiff on Phase 5, which is a Disciplinary Phase that stripped him of all of his AC privileges in violation of DOC policy, DC-ADM 802, Section 3.A.8(a).

22. Both the 8th and 14th Amendment require a Hearing Examiner (HEX) to find an inmate guilty of a DC-141-Misconduct and then impose a DC sanction in compliance of Due Process and DC-ADM 801. The plaintiff arrived on AC status which warranted placement on Phase 4. Instead,

6

the defendants placed the plaintiff on Phase 5, and forced him to do a sixty (60) day DC sanction in violation of DOC policy, as well as our US Constitution.

23. Having completed the unjust DC sanction (Phase 5), the plaintiff was moved to Phase 4 of the STGMU. There, the defendants continuously refused to return or permit the plaintiff his AC privileges.

24. On 5/8/19, the plaintiff submitted grievance #802163, in an attempt to obtain relief and protection from the retaliation, hardships and discrimination that was occurring in the STGMU. Specifically plaintiff informed the CO-C. Greenawalt, that he was unjustly being denied AC privileges, and being treated differently than similarly situated individuals. The defendants immediately retaliated against the plaintiff by falsifying and issuing Misconduct #D317319. At his hearing, the plaintiff submitted an Inmate Version and requested both Video and Witness to show the Misconduct was false and only issued in retaliation. The defendant, HEX-B. Rudzieski, rejected the available evidence and claimed the Misconduct itself was credible, found the plaintiff guilty, and imposed a 30 day DC sanction, which allowed the defendants to place the plaintiffs right back on Phase 5, for challenging their policy and practices.

25. On 5/24/19, the plaintiff submitted grievance #803990, due to the continuous denial of basic privileges and constitutional protections. The CO-C. Greenawalt, ignored plaintiffs grievance, entirely. On 7/23/19, the defendant informed the plaintiff that he is not permitted to appeal

a grievance until an Initial Response is provided. Following an unjustifiable Delay of more than two (2) months, GO's P. Braunlich and T. Stawley stated plaintiff was correct in his claim(s) but denied relief, claiming a Misconduct will effect privileges. The plaintiff appealed to the FM. R. Gilmore, and reiterrated the facts including, but not limited to, the denial of Mental Health Treatment. Rather than investigate the facts being presented, the defendant merely adopted the initial response and too denied relief, pointing to the falsified Misconduct that was issued in retaliation. Despite the evidence being provided by the plaintiff, both defendants; Keri Moore, and S. Varner, denied his finally level appeal, stating no evidence of retaliation or discrimination was offered.

26. As a direct result, the defendants have, and continue to be, Deliberately Indifferent to the effects of the SOC policy and practices within the STGMU through hundreds of grievances and Request to Staff filed by the plaintiff and similarity situated individuals, yet continue to violate both DC-ADM 801; DC-ADM 802, and our US Constitution.

IV. The lack of Programing and Mental Health Treatment violated the plaintiffs 8th Amendment.

27. The 8th Amendment of the US Constitution, prohibits the unnecessary infliction of Cruel and Unusual Punishment.

28. The plaintiff has a longstanding history of mental health problems dating back to his childhood and murder and untimely death of both parents. Despite this fact, the prison system limited his status to a "Level C," which means his mental status is not a "Serious Mental Illness," However, the plaintiffs placement on the mental health roster supports the inference that the defendants had knowledge of his mental health status.

29. We now have an abundance of medical and psycholgical literature, that the dehumanizing effect of solitary confinement is firmly established. In other words, solitary confinement is extremely toxic" and the experience is psychologically painful, traumatic, harmful, and causes anxiety, panic attacks, depression, paranoia, hallucinations, suicidal thoughts, etc., and puts many who are subjected to it at risk of long-term damage; Craig Haney and Mona Lynch, Regulating Prisons of the Future: A Psychological Analysis of Supermax and Solitary Confinement, 23 N.Y.U. Rev. L + Soc. Change 477, 560 (1997).

30. As if psychological harm was not enough, the impacts do not stop there. Physical harm can and often results as well. The mere lack of movement is associated with more physical deterioration. The constellations of symptoms include dangerous weight loss/gain, hypertention, and heart

9

abnormalities, as well as the aggravation of pre-existing medical and mental health issues.

31. On 5/24/19, plaintiff submitted grievance #803990 (supra), due to the lack of mental health treatment, amongst other things, a fact that the defendants deliberately ignored. On 6/21/19, the plaintiff submitted a second grievance #808349, due to the continuous denial and lack of mental health treatment.

32. On 12/11/19, plaintiff submitted grievance #839444, due to the denial and lack of STGMU and other mandatory programing. The plaintiff informed the SO-C. Greenawalt, that he was in the STGMU for ten (10) months and haven't seen, or spoken to a single program or treatment specialist, nor participated in any groups or programing of any kind. Plaintiff was not even required to complete the six (6) mandatory, in-cell packets, during Phase 5 (supra). Despite DC-ADM 804, section 1.C.3., prohibiting his involvement, plaintiffs grievance was forwarded to STGMU Unit Manager (UM) - A. Dumbateric, who unjustifiably delayed the response until 2/6/20, and than denied relief claiming there was a temporary hiatus on programing. The plaintiff immediately appealed to the FM R. Gilmore. Rather than investigate and implement the required treatment and programing, the defendant - R. Gilmore, suggested the plaintiff "cooperate with the unit team," and denied relief. In other words, the defendants wanted to stay quite about the lack of treatment services and continue the plaintiff in a program that was inoperatable and in violation of the 8th Amendment.

Due to institutional delays, the plaintiff was not able to file his Final Level Appeal until 3/20, at which time the defendants - keri Moore, and D. Varner, dismissed the plaintiffs appeal stating it was three (3) pages and therefore could not be Reviewed. Denying the plaintiffs final level appeal, without giving him the opportunity to correct his filling denied him his Due Process and subjected him to continued Cruel and Unusual Punishment in violation of the 8th Amendment.

33. The plaintiffs placement in Long-Term Solitary Confinement caused him irreversible damage to his mental and physical health. Specifically, the lack of movement and excercise caused further back problems and for him to deteriozate physically; and increased his anxiety, paranioas, depression, hallucinations, and lack of impulse control.

34. The defendants know and are Deliberately Indifferent to the fact the plaintiff was arbitrarily placed into the STGMU (Claim II) for an extended period of time, and that such placement created a substantial risk to his Mental and Physical Health. The defendants also know or Deliberately Indifferent to the fact that programing and mental health treatment within the STGMU is inadequate, or non-existed. The impact of Long-Term Solitary Confinement (STGMU) has been to the defendants attention through numerous courts decisions, prisoners grievances, Request to Staff, 802 Appeals, and other forms of communication with prisoner rights advokacy groups. Nevertheless, the defendants refused to take reasonable steps to correct this systematic violation of the plaintiffs rights. As a direct result, the plaintiffs 8th and 14th Amendment Rts, is and be continue to be violated.

II

**V.** The defendant(s) issued fabricated Misconduct charge(s) in retaliation, and than found the plaintiff guilty in violation of his right to Due Process.

35. The 1st Amendment of the US Constitution prohibits Retaliation, and deprivation of Due Process is a violation of the 14th Amendment.

36. The defendants clearly violated the plaintiffs Due Process by arbitrarily placing him in the STGMU (see Claim II). However, the PA DOC has a mysterious policy DC-ADM 6.5.1., which govern the STGMU and denies Due Process in itself. Whenever the plaintiff would attempt to challenge a policy or action(s) and inaction of defendants, including the denial of Mental Health treatment, STGMU Programing, and deliberate interference with the plaintiffs right to communicate with family and friends, the defendants would retaliate in many ways, including fabricating and issuing false Misconducts in retaliation.

37. Before resorting to litigation, plaintiff sought to put an end to the defendants systematic constitutional violations by filing hundreds of documents, including Request to Staff, DC-ADM 801 Appeals, and DC-ADM 804 Grievances, but received unfavorable responses of denials every single time. In fact, such filings were often met with futher acts of retaliation, while the defendants persisted in their unconstitutional and unlawful policies and practices.

38. Both the 8th and 14th Amendment require a Hearing Examiner (HEX) to find an inmate guilty of a DC-141-Misconduct and than impose a sanction in compliance with the Due Process Clause. The completed his DC sanction at SCI Somerset and

arrived at SCI Greene's STGMU on AC status, which warranted him being placed and beginning the program on Phase 4. Instead, the defendants (STGMU-Unit team) placed the plaintiff on Phase 5, which is a Disciplinary Phase, and forced him to do an unjust sixty (60) day DC sanction in violation of DOC policy and our US Constitution, (see Claim III).

39. The plaintiff spoke with the defendants on several occasions in an attempt to resolve the issue but to no avail. On 5/8/19, the plaintiff submitted grievance #802163, regarding the unwarranted DC sanction (among other things), and the defendants immediately began to specifically target and retaliate against him. On 5/10/19 (just two (2) days later), CO. Stillwagon issued Misconduct #D317319, which consisted of three 3 charges, including Assault. At his hearing the plaintiff submitted an Inmate Version and requested both Video and Witness to prove the Misconduct was false and only issued in retaliation. Although the HEX-B. Rudzienski, dismissed the Assault, she rejected the evidence available and claimed the report was crediable, found plaintiff guilty of the remaining charges and imposed a 30 day DC sanction which resulted in plaintiff being returned and placed right back on Phase 5. On 5/24/19, the plaintiff again submitted a grievance #803990, due to the retaliation and other constitutional violation(s) occurring within the STGMU. The defendants ignored the plaintiffs grievance for two (2) months. Than on 7/26/19, the GO- P. Braunlich, pointed to the false Misconduct (supra) that was issued on 5/10/19, and denied relief. Rather than investigate the facts being presented, the FM- R. Gilmore, adopted the initial response and also pointed to the false Misconduct that was issued in retaliation in an attempt to justify denying the plaintiffs grievance involving several constitutional violations. The plaintiff than

appealed to Final Review. There, the Chief CO- keri Moore, stated the plaintiff could not prove retaliation, and that his behavior (receiving Misconducts) will impede his progression through the STGMU and denied relief.

40. On 6/21/19, the plaintiff submitted grievance # 808349, due to the lack of and denial of Mental Health treatment. On 6/24/19, (just three (3) days later), the defendants again retaliated against the plaintiff by having CO. Phillips, issue another Misconduct # 317373, with three (3) charges. At his hearing, the plaintiff again submitted an Inmate Version and requested Video Footage to prove the Misconduct was false. The HEX- B. Rudzieski, did review the video, even agreed and acknowledged CO.Phillips, is not present, but than returned to and claimed the Misconduct was credible and imposed a sixty (60) day DC sanction and, 30 day yard restriction. Because the STGMU is a program within the Restricted Housing Unit (RHU), the plaintiff was already limited to one (1) hour of exercise, five (5) days a week, this sanction is a violation of the 8th Amendment Cruel and Unusual Punishment, as it deprived the plaintiff an exercise period entirely and required him to remain in a six (6) by twelve (12) foot cell for 24 hrs a day, 7 days a week, for 30 days. On appeal, PRC- G. Johnson (CHO), R. McCumbie (UM), and S. Longstrength (UM), claimed no violation occurred and denied relief. Despite the facts and evidence being presented in the plaintiffs appeal, the FM- R. Gilmore, stated he would not alter the ruling or sanction and denied relief. At Final Review, the Chief CO- Z. Moslak, claimed the plaintiff could not provide any persuasive evidence to show the defendants violated his Due Process or other rights and denied relief. Video Footage is factual evidence. If a reporting officer is not present, it is impossible for him to have, or offer evidence, yet the plaintiff was still found guilty by his report.

14

41. CO. Estle, a newly-hired officer, was assigned to the STGMU and immediately targeted, harassed, and even threatened the plaintiff on several occassions. On 6/25/19, the plaintiff filed a grievance due to CO. Estle depriving him of meals, linen-exchange, medication, and verbal threats and harrassment. CO.'s Daff and Ober, both witnessed some of these events and were named in plaintiffs grievance. Rather than investigate, interview said witnesses, or even respond, the GO-C. Greenawalt, completely ignored the plaintiffs grievance. On 7/29/19, the plaintiff wrote a Request to Staff to the GO inquiring about said grievance but the plaintiffs Request also went ignored. Policy states an Appeal may not be submitted until an Initial Response is provided. However, the plaintiff appealed to the FM-R. Gilmore, on 8/20/19 (two (2) months after the initial filing) but this appeal also went ignored which is disturbing considering the fact the plaintiff informed the FM that the GO's failure to act resulted in additional harm being inflicted by this officer. On 9/6/19, the GO (STGMU-UM) A. Gumbarvic, finally provided the plaintiff with an initial response, which consisted of one (1) sentence and denied relief. The GO-A, Gumbarvic even attempts to blame the plaintiff for one of the meals he was deprived of. Nearly three (3) months after the fact, the plaintiff was finally able to appeal to the FM level. There, the plaintiff respectfully pointed to the poor and bias response provided by the GO, and how the GO ignored everything said in the grievance. On 10/1/19, the FM-R. Gilmore, points to a single meal the plaintiff was deprived of and denied relief, ignoring all the other facts in the initial filing, and how failing to act in a timely manner resulted in additional harm being inflicted by this officer. Although the FM stated the handling and delay in response(s) would not affect the plaintiffs appeal, the Chief GO-keri Moore and D, Varner, dismissed his Final Level Appeal as untimely.


42. Discussed above, the plaintiff received a 30 day DC sanction, effective

15

5/10/19, for Misconduct #D317319. On 6/26/19, the plaintiff submitted grievance # 808809 due to the defendants refusing to change his status from DC to AC when the DC sanction was completed which resulted in the denial of commissary, telephone and kiosk access, and other privileges. The plaintiff also informed the GO that the STGMU UM-Dumbarvic, deliberately lied to him and informed him it was not necessary for him to meet with PRC. On 7/30/19, more than a month after the initial filing, GO-R. kennedy, denied relief. The GO stated the plaintiff refused to meet with PRC, and plaintiff placed commissary orders on 6/20/19 and 6/26/19, clearly ignoring the facts presented by the plaintiff. The plaintiff appealed to the FM-Gilmore, and pointed to the Other Report #D274988, issued on 6/18/19, changing his status from DC to AC. Somehow, the FM also claimed the plaintiffs status was changed at the appropriate time and denied relief. The plaintiffs Final Level Appeal was answered on 10/1/19, by both Chief GO's- keri Moore and D. Vaner. Here, the defendants stated after a review of the record there was little their review could add to the responses that were provided. They too state the plaintiffs status was changed at the appropriate time, clearly adopting and relying on the defendants earlier and lower level responses. The defendants go on to state that while the plaintiff may take issue with this statement made by the facility, this review (final level appeal) will not calculate DC time based on documents (evidence) presented with an appeal. In denying relief, the defendants also stated the plaintiff does not seek any specific relief. This is just one of many instances where the defendants cause the plaintiff some sort of harm and than deliberately rejects his grievance(s) at every level denying him proper, fair, and just review and decisions and clearly establishing just how bad's and unfair the grievance procedure(s) are in the PA.DOC.

16

43. On 7/15/19, the plaintiff submitted grievance #812355, due to CO. Estle (supra) now targeting, reading, and deliberately interfering with the plaintiffs personal mail. The plaintiff had, and was raising concerns regarding his personal mail for several weeks prior to CO. Estle blantly bragging about having complete access to all his mail, and laughing at how he was able to simply confiscate it. The plaintiff informed the GO that he was being targeted, harassed, and retaliated against by this officer, and that he only confiscated a letter consisting of family photos of children as an act of revenge and retaliation because the plaintiff filed a grievance #808807 (supra) against him. The plaintiff also informed the GO-Greenawalt that he contacted several other staff members, including UM-Dumbarvic, in an attempt to address and resolve the issue(s) and actions of this officer. Despite

DC-ADM 804, Section 1.C.3, prohibiting anyone named in the grievance from being part of the response, STGMU UM-Dumbarvic, once again denied the plaintiff relief, not only allowing but encouraging this officers actions. The GO deliberately chose to ignore the pattern of harassment and retaliation but instead stated this newly-hired officer can read all my mail while I am in the STGMU. The FM-R. Gilmore, once again ignores the facts involved and merely adopted the GO response and denied relief. The plaintiff filed a Final Level Appeal, and reinterated all of the necessary facts in hopes to obtain some sort of relief. Unfortunately, the Chief GO-Keri Moore and D. Varner, simply restated the facility response(s) and denied relief.

44. On 9/7/20, approximately six (6) months past the plaintiffs completion date, the defendants further retaliated against the plaintiff by fabricating and issuing another false Misconduct #D477831. To the plaintiffs surprise, the reporting officer-CO.Cole, claimed she did not write the Misconduct and the

plaintiff could request her as a witness, as it was not her signature on the report. Rather than interview co. Cole, the HEX- B. Rudzienski, relied on an entirely different officer- Hunsaken(?), who stated co. Cole would not attend the hearing but that was her signature. Not only did the HEX rely on hearsay, she found the plaintiff guilty without actually investigating or interviewing co. Cole, clearly prejudiced the plaintiff and denied him his Due Process. However, the facts relating to this Misconduct does not stop there. Not only does the true identity of the reporting officer remain unknown, the plaintiff informed the HEX that the Misconduct was actually issued in retaliation for having a visit scheduled with a love one. While the defendants deliberately deprived the plaintiff of numerous scheduled visits (Claim **VI**), prior to, and after, the date of this fabricated Misconduct, records will reveal the plaintiff was scheduled and should have been on a visit at the exact date and time of the Misconduct report. In fact, the reporting officer (whomever it was) clearly stated the plaintiff was yelling about his visit but lied saying the plaintiff was cursing and making threats in order to issue the Misconduct but it actually does the complete opposite. Here, the plaintiff was scheduled for a visit, which is extremely limited in the STGMU, and when he reminds the defendants of such, he is retaliated against and received an additional Misconduct. On appeal, the defendants- T. Richards, J. Sibanda, M. Dunton, and FM- M. Zaken (newly assigned Facility Manager) all denied relief claiming no violation occurred, and plaintiff did not present any argument of merit and would not alter the ruling or sanction. Despite filing a timely appeal, the Chief HEX- Z. Moslak, ignored the plaintiffs appeal entirely. Failing to act denied the plaintiff his Due Process and his right to a fair, proper, and unbias hearing resulting in the plaintiffs First, Eighth, and

Fourteenth Amendment being violated.

45. Having been found guilty of Misconduct # D477831 (supra), the plaintiff returned to the unit following his hearing and immediately CO. Cole. This officer already informed the plaintiff she did not write the Misconduct so the plaintiff asked why she refused to attend the hearing. To the plaintiff's suprize, CO. Cole stated she was never called or requested at the hearing. At this point, STGMU Sgt. Pluck, inserted himself in the conversation and stated "Parker, you just don't learn or know when to shut the fuck up. I got something for you," and both defendants left. Shortly after, two (2) unknown officers appeared at the plaintiff's cell-door and instructed him [plaintiff] to turnover all his personal property - Electronics, commissary etc. The officers refused to provide a reason or inform the plaintiff as to what was going on. Knowing the consequence(s) of refusing orders given by staff, the plaintiff complied. Once he was stripped down to his underwear he was cuffed and escorted to what is often referred to a Hard Cell, where he remained for the remainder of his time in the STGMU and left there with nothing but his thoughts. Later that day the plaintiff received Misconduct # D477842, issued by Sgt. Pluck. Here, Sgt. Pluck claims he ordered the plaintiff to move to another Pod and he replied " I'm not fucking moving anywhere." This interaction is completely false. The interaction between Sgt. Pluck and plaintiff (supra) occurred in-front of CO. Cole, yet she is not named as witness or involved. Despite lack of audio, the plaintiff requested video footage to show he complied with the unknown officers and there was no delay in him moving. The HEX - B. Rudzieski, once again rejected factual evidence and claimed the report itself was credible and found the plaintiff guilty and imposed a 30 day DC sanction.

19

On appeals, the plaintiff informed the defendants- T. Richards, J. Sibanda, M. Guyton, and PM- M. Zaken, that there was no evidence to support a finding of guilt, and the Misconduct was just another example of the continuous retaliation being inflicted by staff within the STGMU. The defendants simply ignored the facts being offered by the plaintiff, and claimed the evidence presented supported a finding of guilty, nor would they alter the ruling or sanction. In addition to the Misconduct issued by Sgt Pluck (supra), CO. Cole issued Misconduct #D477843, in which she accused the plaintiff of using obscene or inappropriate launguage to, or about an employee. Despite CO. Cole leaving the unit with Sgt Pluck (supra), this reporting officer claimed the plaintiff waited until Sgt Pluck left the unit and than began cursing this officer. While the plaintiff is unable to prove it, he believes Sgt Pluck instructed CO. Cole to lie and issue this fabricated Misconduct. Since plaintiff believes CO. Cole left the unit with Sgt Pluck you have to wonder what was said between the two (2) of them. Remember just days before this the plaintiff was issued Misconduct #D477831. Here, CO. Cole claimed she did not write the Misconduct, and refused, or was never called to a hearing, for which the plaintiff was just found guilty. While the plaintiff is not an expert, he points this County's attention to the signiture on the Misconducts. They are clearly different which further establish staff not only used, but abused, the Misconduct procedure to retaliate and inflict harm in violation of the First and Eighth Amendment of our US Constitution. On appeal, the defendants (supra) claimed no violation occurred and they [defendants] would not alter the ruling or sanction. On 10/9/20, the plaintiff appealed to Chief HEX- Z. Moslak. On 12/3/20, the plaintiff wrote to the defendant(s) inquiring about Misconduct(s) #D477831, #D477842, and #D477843. On, or about 1/5/21, the defendant- Z. Moslak,

20

replied stating a response was already provided, but would forward courtesy copies to the plaintiff but they were never received.

46. Of these Misconducts, not a single one consisted of factual evidence. In each instance, the plaintiff requested video and witnesses pursuant to DC-ADM 801, Section 3.D.1., but was denied on each occassion resulting in a finding of Guilt, and violating the plaintiffs Due Process.

47. Each of these false disciplinary reports were issued in retaliation for the plaintiff filing grievances relating to the conditions of his confinement which is a complete violation of plaintiffs First, Eigth, and Fourteenth Amend-ment ) of our US Constitution.

48. The defendants have, and continue to be, Deliberately Indifferent to the retaliatory acts, and effects of the DOC Policies and practices in the STGMU through hundreds of grievances and Request to Staff filed by the plaintiff and other similarly situated individuals.

VI. The defendant(s) deliberately deprived the plaintiff of his Visits, Phone Calls, Emails, and incoming Mail in violation of his 1st Amendment.

49. The 1st Amendment of the US Constitution prohibits the deprivation of the plaintiffs Visits, Phone Calls, Emails, and Mail.

50. On 3/21/19, the plaintiff was admitted to the STGMU. Both the 8th and 14th Amendment require a Hearing Examiner (HEX) to find an inmate guilty of a DC-141-Misconduct and then impose a DC sanction in compliance of Due Process and DC-ADM 801. The plaintiff arrived on AC status which warranted his placement on Phase 4. Instead, the STGMU Unit Manager (UM) Gumbarevic, placed the plaintiff on Phase 5, and forced him to do a Sixty day (60) DC sanction in violation of DC policy as well as our US Constitution.

51. DC-ADM 801, Section 6.A.5, (Disciplinary Custody Status) states "Visits are limited to One (1) non-contact visit per month, which is limited to weekdays only, with immediately family members only. The plaintiff lost both parents by the age 9, and no longer has any surviving grandparents. The plaintiff is aware of DC-ADM 801, limiting his visiting privileges while on DC status, However, the plaintiff arrived at the STGMU on AC status. Despite this fact, and without Due Process, the defendant(s)-Gumbarevic, placed the plaintiff on Phase 5, and not only limited his visits, they deprived and restricted them entirely. Unlike other Specialized Programing, the STGMU is governed by DC-ADM 6.5.1, which cannot be viewed by the plaintiff (Claim II). The plaintiff was told his visiting privileges would not increase until he progressed and reached

22

Phase 3, which takes, at a minimum, five (5) months to reach.

52. On 7/5/19, the plaintiff again wrote to his counselor, Coulehan, regarding the harassment, discrimination, retaliation, and other hardships being inflicted by the STGMU staff. While his counselor acknowledged the issues were discussed, he failed to act or protect the plaintiff the constitutional violations that were occurring in the STGMU.

53. On 7/15/19, plaintiff submitted grievance #812355, due to defendant CO. Estes, now targeting, reading, and deliberately interferring with the plaintiffs personal mail. The plaintiff contacted numerous prison officials seeking protection from this officer (Claim X). Their failure to act, than resulted in this officer now deliberately depriving and targeting the plaintiff of his personal mail. Despite the pattern of retaliation and harassment, the UM-Sumbrovic, refused to take action and denied the plaintiffs grievance. The defendants- FM Gilmore, and Chief CO keri Moore, stated the plaintiff was in the STGMU. There, any and all officers, regardless of experience, history, or rank, can read and delay mail and denied relief. All of the defendants refused to acknowledge the officers actions were an act of retaliation and harassment for the plaintiff submitting grievance #808807, supra.

54. As stated above, the plaintiffs visits and contact with love ones was severily and unjustly, restricted from the very beginning. On 7/3/20, the plaintiff submitted grievance #878401, due to the STGMU unit team deliberately interfering and denying the plaintiff of his scheduled visit.

23

the assigned GO-kulik, denied relief claiming the plaintiff never had a visit scheduled, and all visits would need to be approved and scheduled by the UM-Dumbarvic. The plaintiff was able to obtain and provide proof that a visit was scheduled, and that his UM and other defendants were intentionally depriving him and his visitor of a scheduled visit. Provided with proof, the plaintiffs grievance was Remanded. The newly-assigned GO-McKimbies now claimed a visit was scheduled but "Count" interfered, and denied relief. The plaintiff appealed to the FM-M. Zaken, who finally answered the grievance on 11/3/20, and denied relief by relying on the Ramanded response that "Count" interfered. Before receiving the FM response the plaintiff was transfered and somehow admitted to the STGMU at SCI Fayette. The plaintiff was forced to continue exhausting his grievance(s) through the US Mail. The plaintiff wrote to the defendant-Shawley, inquiring about the status of his grievance. Having obtained an unfavorable response, the plaintiff appealed to the Chief GO-keri Moore, on 1/12/21. On 2/16/21, the defendant responded to the plaintiffs Final Level Appeal by denying review entirely stating "delays due to transfer(s) and mail could not be substantiated.

55. Following the denial of plaintiffs scheduled visit the STGMU unit team began to target, interfere, alter, and deny the plaintiffs emails to and from family, and friends in violation of the 1st Amendment. On 7/9/20, the plaintiff submitted grievance #877266, due to his emails being targeted and unjustly denied. The GO-M. Howells, stated a determination was made to alter, or deny the plaintiffs emails but refused to provide a reason which clearly violated the plaintiffs 1st and 14th Amendment. On 7/24/20, the plaintiff submitted grievance #880031, due to his emails continuously

being altered or denied with no reason as to why. The defendant again denied relief and informed the plaintiff that future denials and editing will occur. In denying relief, the FM-M. Zaken, claimed the plaintiff was not being targeted and the Chief CO-keri Moore, denied relief stating if or when STGMU staff choose to alter or deny an email the reasons will not be revealed. On 8/12/20, the plaintiff submitted an additional grievance #881322, due to the defendants continuously targeting and denying the plaintiffs emails with no reason as to why. The defendants again denied relief claiming no reason needs to be provided and that the proper procedures were being followed by refused to state what they were. The Chief CO-keri Moore, allowed STGMU staff to deliberately interfere with the plaintiffs ability to communicate with love ones by way of email which was a clear violation of his 1st and 14th Amendment.

56. On 9/6/20, the plaintiff submitted grievance #887452, due to the STGMU staff returning to and denying him of yet another scheduled visit. The CO-kulik, once again pointed to and relied on count in an attempt to justify and protect the actions of the STGMU staff and denied relief. The plaintiff was transfered while exhausting his grievance but the FM-M. Zaken, and Chief CO-keri Moore, refused to accept cause for the delay in the plaintiffs appeal and dismissed his grievance as untimely.

57. On 9/8/20, the plaintiff submitted grievance #887814, due to the denial of another scheduled visit. This time STGMU Counselor-Coulehan, was assigned to answer the plaintiffs grievance. The defendant denied relief claiming there was no evidence of staff deliberately interfering

with the plaintiffs scheduled visit(s), and that it was "count," that interfered. The defendant refused to acknowledge that this was not an isolated incident, that the STGMU staff were depriving him of his visit(s) in retaliation. The plaintiff was transferred to two different locations while exhausting this grievance but both the FM-M. Zaken, and Chief CO-keri Moore, refused to accept cause for the delay and dismissed the plaintiffs grievance as untimely.

58.   In response to Covid 19, the Secretary of Corrections, John E. Wetzel, approved five (5) free phone calls for all PA inmates. On 5/12/20, I received a "notice" from SCI Greene's Major M. Malpnosk, reducing the plaintiffs five (5) free   calls to three (3), for no reason other than he was in the RHU and the plaintiff submitted grievance #869088, informing the CO-P. kennedy, that his calls should not be reduced based on housing alone. The defendants refused to acknowledge the plaintiff was well passed the completion date and should not have been in the STGMU, or any other RHU, at this time. In denying relief, the defendant stated the plaintiffs calls were being reduced to three (3), more than he was initially entitled to. On appeal, the FM-M. Zaken, merely adopted the initial response and the Chief CO-keri Moore, stated that no violations occured, and the plaintiff did not offer any additional evidence that warrants altering earlier responses and denied relief.

59.   Since Long-Term Segregation was ruled unconstitutional prison officials have been implementing and abusing various treatment units such as the STGMU to place inmates in long-term segregation and

inflict a variety of hardships in violation of their protected rights. Here, the plaintiff demonstrated how the defendants deliberately violated his 1st Amendment throughout his entire duration in the STGMU, by depriving him of his visits, phone calls, mail, email, etc., leaving him no forms of communication with love ones and those in society.

60. The defendants know and are deliberately indifferent to the plaintiffs rights being violated and continuously refused to take reasonable steps to correct this systematic violation of the plaintiffs rights. As a direct result, the plaintiffs 1st Amendment has, is, and will continue to be violated.

27

VII. The defendant(s) deliberately deprived the plaintiff of his personal property in violation of his 4th and 14th Amendment.

61. The 4th Amendment of the US Constitution, prohibits unreasonable searches and seizures of the plaintiffs property, and the 14th Amendment guarantees the plaintiff will not be deprived of his property without Due Process.

62. Following the plaintiffs initial placement in the Restricted Housing Unit (RHU), his cellmate (Mckenzie #LW-5745) turned over a dozen items of his personal property to the defendant - UM-Ms. Henderson. The plaintiff set Request to Staff to several prison officials, including but not limited to, UM-Ms Henderson, Security Lt-Turner, Lt. Walters, Sgt. Gerber, etc, but to no avail. On 12/1/18, the plaintiff submitted grievance #774697, informing the OO-C, Schenck, that he was unjustly being deprived of his personal property. The defendant repeatedly rejected the grievance for the plaintiffs failure to provide documentation that was never issued or provided. The defendant instructed the plaintiff to atleast provide some sort of proof that the property was in fact his. The plaintiff was able to obtain proof of ownership but the defendant rejected his grievance again and stated "you can not prove these items were in your possession" and even went a bit further with "the grievance was not submitted within 15 days." The plaintiff then appealed the grievance to the FM-E. Tice, who simply ignored the facts listed in the appeal. Instead, the defendant merely adopted the initial response and denied the plaintiffs grievance. Both

28

defendants failed to recognize the fact the plaintiffs Unit Manager was deliberately depriving him of his personal property in violation of his 4th and 14th Amendment.

63. On 9/23/20, more than seven (7) months passed his completion date, the plaintiff was instructed to pack his personal property, that he was finally being released from SCI Greene's STGMU. During a meeting with the Unit team-Coulehan (counselor), Pluck (Sgt), and Weeden (psych), later that day, the plaintiff informed them several items of his personal property, including a 18kg Chain + Cross, was missing from his stored property. To the plaintiff's surprise, Sgt Pluck, quickly located and held   the plaintiffs gold chain and cross in front of him during this meeting. While the defendant-Sgt Pluck, claimed he had no knowledge of the other missing property, he did state he would put the plaintiffs gold chain and cross into his packed property.

64. To the plaintiffs disbelief, he was not released from Greene's STGMU. Instead, he was transferred, despite an active separation, to SCI Fayette (see Claim VIII). On 10/6/20, the plaintiff mailed a grievance, later identified as #893820, to SCI Greene's GO-T. Shawley, due to Sgt Pluck never placing his gold chain and cross into his property when he was being transferred.

65. On 10/13/20, the plaintiff was transferred to SCI Dallas, released from   long term solitary confinement, and placed on Phase 1 of the STGMU. From SCI Dallas, the plaintiff began sending letters to Greene's GO-T. Shawley, inquiring about several pending grievances (see claim VIII),

29

but to no avail. The plaintiff only received one (1) response from the defendant in which she fails to acknowledge grievance # 893820. Having obtained a copy of the Rejection through SCI Dallas' GO-Mr. Sagan, and UM-Drohowski, the plaintiff mailed a Resubmittal of this grievance to SCI Greene on 3/27/21. Having received no response, the plaintiff mailed another letter to the defendant at Greene on 5/21/21, but still received no response, making it impossible to exhaust the issue of the defendants stealing the plaintiffs gold chain and cross, DC-ADM 804, section 2.A.1.(b).

66. When inmates are afforded the oppertunity to possess property, they enjoy a protected interest in that property that cannot be infringed upon without Due Process. Here, the defendants deliberately deprived the plaintiff of his personal property in violation of the 4th and 14th Amendments.

67. Furthermore, on 11/13/20, the plaintiff mailed grievance # 900259, to SCI Fayette, due to him being charged # 75.55, to ship the remainder of his property to SCI Dallas, when he was being released from long term segregation. Despite a lenthy response, the GO-C. DiSalvo, claimed the plaintiff was charged due to the change in transfer method, and that the plaintiff was not forced to sign a blank Cash Slip agreeing to postage. On appeal, the plaintiff informed the FM-M. Capozza, that if there was a change in transfer method it should not have played a factor, and if he did not sign the blank Cash Slip than he would have been deprived of his property entirely. For these reasons the

plaintiff believes he should have been exempt from cost and requested reimbursement of the $75.55. The defendant relied on the reasons that were provided in the initial response, and denied relief. The Chief operkeri Moore, simply reiterated the facts that were discussed at each level and denied relief, leaving this issue fully exhausted.

68. The defendants know and are deliberately indifferent to the plaintiff's rights being violated and continuously refuse to take reasonable steps to correct the violation of the plaintiff's rights. As a direct result, the plaintiff's 4th and 14th Amendment has, is, and will continue to be violated.

31

**VIII** The defendant(s) deliberately participated in a two (2) year "Campaign of Harassment" in violation of the 8th Amendment.

69. The 8th Amendment of the US Constitution, prohibits Cruel and Unusual Punishment (ie. Deliberate Indifference).

70. On 10/29/18, the plaintiff was issued Misconduct #D118983, and placed in SCI Somerset's Restricted Housing Unit (RHU). At his hearing, the plaintiff pled guilty to the charge of fighting and received a 90 day DC sanction. It was at this time the defendants began what is being referred as a "Campaign of Harassment," beginning with the plaintiffs personal property (see Claim VII) and Due Process violation (Claim II).

71. On 12/27/18, Capt. Thomas, issued Other Report #D055412, cutting the plaintiffs remaining DC time and placed him on AC pending transfer. The plaintiff was verbally told he would not be released from the RHU, that he was being transfered and placed in an STGMU. On 1/3/19, the plaintiff appeared before defendants - M. Houser (DSCS), J. Filler (Major), and M. Pyle (UCPM), and raised his "objection" to such placement. The defendants immediately retaliated against the plaintiff by claiming the "time-cut" was an error and reinstated the plaintiffs remaining DC time. Despite the plaintiffs inquiry, the defendants refused to provide or state a reason as to why the plaintiff was being considered or recommended for an STGMU. The plaintiff was told it was merely a Referral and if accepted, he would be given the opportunity to appeal

32

and address any issue(s) or concern(s) he may have. On 2/7/19, the plaintiff appeared before defendants - M. Houser (DSCS), R. Snyder (Major), and M. Brothers (Capt), and informed them his Due Process was being violated, that DC-ADM 802, Section 6.C., states "Reason(s) for STGMU placement shall be given". The defendants continuously refused to provide a reason. In fact, the defendants DC-141, Part 3 and 4, make no mention of plaintiffs request(s), issue(s), or concern(s). On 2/12/19, the plaintiff submitted grievance #786599, explaining how his Due Process was being violated and the defendants were attempting to have him placed into an STGMU in retaliation. Despite DC-ADM 804, section 1.C.3., prohibiting his involvement, M. Houser was assigned to answer and resolve the plaintiffs grievance. Instead, the defendant claimed the plaintiff was informed of his appeal rights but he did not inquire about appeal procedures with PRC and denied relief. The FM-K. Tice, adopted the initial response and denied relief. The Chief GO-keri Moore, ignored DC-ADM 802, section 2.D.12., along with the facts being presented, and claimed the plaintiffs Due Process and Retaliation claim(s) could not be reviewed through DC-ADM 804, which effectively denied him his 14th Amendment and resulted in the arbitrary placement in the STGMU (see Claim II.).

72. On 2/21/19, the plaintiff was transferred and admitted to SCI Greene's STGMU without ever receiving a decision from Central Office regarding the STGMU Referral. The plaintiff immediately realized the STGMU was being used as a smoke-screen to justify long term solitary confinement, and house, restrict, and inflict a variety of hardships in violation of the 1st, 4th, 8th, and 14th Amendment.

73. The defendants acts and omissions, during the plaintiffs duration in the STGMU, consisted of mail tampering, deprivation of exercise, meals, showers, medication, etc, deprivation of visitation, phone calls, and other forms of communication with family and friends, denial of AC privileges, continued placement in long term segregation, threats of other, and, further forms of retaliation including, but not limited to, fabricated Misconducts and deprivation of property, in response to the plaintiff filing grievances and appeals (see Claims I, II, III, IV, V, VI, and VII).

74. On 7/5/19, the plaintiff again wrote to the defendant-Cruikman (Counselor), regarding the harassment, retaliation, and other hard-ships being inflicted by the STGMU staff. While the defendant acknowledges the issues were discussed, he failed to act, or protect the plaintiff from the constitutional violations that were occurring in the STGMU.

75. On 3/10/20, the plaintiff appeared before defendants-M. Zaken (DSFM) Switzer (Major), and Mr. Dumbarvic (STGMU, UM), and informed them he was in the STGMU for over 14 months and not seen or spoken to a single treatment specialist, nor did he participate in any sort of groups, or programs. Despite this fact, the plaintiff advanced through Phases 5, 4, 3, and 2, and should have been released from the STGMU. Instead, the defendants continued the plaintiff on Phase 2, and held him in long term segregation in violation of the 8th Amendment.

34

76. Despite an active seperation, and well passed his completion date, the plaintiff was transferred and admitted to the STEMU at SCI Fayette, where he appeared before defendants- J. Trempus (DSFM), S. Manky (Major), and P. Aurandt (STEMU, UM), on 10/1/20, for initial STEMU placement. This transfer only further establishes the never-ending cycle of abuse of the STEMU.

77. When considering conditions of confinement, a court often looks at how bad it is and how long it lasted. One way to prove condition issues is to consider complaints and grievances (see Claims) the plaintiff and other prisoners filed, as well as other sorts of prison records.

78. Furthermore, the plaintiff points to a "Totality of conditions". One meal, exercise, or visit may be overlooked, but if it keeps happening it can establish a "campaign of harassment." Using this the plaintiff argues that even if some of the conditions are not unconstitutional on their own, they add up and create an overall effect that is very much unconstitutional.

79. Between October 2018, and May 2021, the plaintiff suffered a "campaign of harassment" at the hands of the defendants, all in the name of programing. Each Phase of the STEMU consist of different levels and forms of programing but none were being implemented (see Claim IV.). In addition to the funding to house each prisoner, funding is provided for programs such as Violence Prevention, MIDAC,

Thinking for a Change, etc., none of which is being provided. To place the plaintiff in long term solitary confinement (STGMU) for over two (2) years under the pretenses he was participating in and completing programing was a violation of his constitutional rights and entitles him to relief.

**IX.** The defendant(s) are guilty of violating plaintiffs Procedural Due Process right, pursuant to the 14th Amendment.

80. The 14th Amendment of the US Constitution, prohibits the deprivation of Procedural Due Process.

81. The defendants policies, procedures, and routine practices systematically violated the plaintiffs protected rights. Such policies, procedures, and routine practices include, without limitation:

- Prolonged Solitary Confinement.
- The unavailable policy "(i.e. DC-ADM 6.5.1) that supposedly governs placement in the STGMU.
- The denial and lack of a "Criteria and STG Validation Hearing" prior to STGMU Recommendation and placement.
- The denial and lack of "proper" notice, review, and reason for STGMU Recommendation and placement.
- The denial and lack of Psychological Evalution(s) prior to STGMU Recommendation and placement.

82. The defendants are guilty of violating plaintiffs fundamental right to Due Process standards of fairness and justice by: denying him access to review policy DC-ADM 6.5.1, which directly governs STGMU placement and creates a "Atypical and Significant" hardship (Liberty Interest); denying him due, and proper notice, review, and rationales prior to STGMU placement, and the opportunity to object, rebut, challenge,

and appeal said Recommendation and placement; denying him an STG Validation Hearing, and the ability to review, rebut, or challenge any evidence used in an STGMU Recommendation; and denying him a Psych Evaluation to determine if he was mentally stable enough to sustain the impact of long term solitary confinement.

83. The defendants actions/inaction(s), oversight, incompetence and failure to administer the Due Process right attributed to the dramatic deterioration of the plaintiffs Mental and Physical Health, and causing an atypical and significant hardship. As a direct result of said inaction, oversight, incompetence, and failure, the plaintiffs 14th Amendment has, is, and will continue to be violated.

**X.** The defendants are guilty of violating plaintiffs Substantive Due Process right pursuant to the 14th Amendment.

84. The 14th Amendment of the US Constitution prohibits the deprivation of Substantive Due Process.

85. The defendants policies, procedures, and routine practices systematically violated the plaintiffs protected rights. Such policies, procedures, and routine practices include, without limitation:
- Continuious violation of DC-ADM 802, Section(s) 2.A.; 2.C.; 2.D.; and section(s) 3.A.; 3.B.
- Continuious violation of DC-ADM 801, Section(s) 3.D.; Section(s) 4.A.; Section(s) 6.A. and C.
- Continuious violation of DC-ADM 804, Section(s) 1.C.; Section(s) 2.A.; and Section(s) 3.B.
- Subjecting plaintiff to a Defacto punitive status (STGMU-Phase 5) and depriving him of his AC privileges.
- Routine housing into a "program" (STGMU) that is well known to be inactive, inoperative, and lacks programing, in an atempt to justify retaliation and long-term segregation.

86. The defendants are guilty of violating the plaintiffs fundamental right to Due Process standards of fairness and justice by: denying him access to programing; out-of-cell group therapy and activities, treatment program

39

specialist, social worker, drug and alcohol or education and religious services.

87. The defendants actions (inactions), oversight, incompetence, and failure to administer the Due Process right attributed to the dramatic deterioration of the plaintiffs Mental and Physical Health, and causing a Atypical and Significant hardship. As a direct result of said inaction, oversight, incompetence, and failure, the plaintiffs 14th Amendment has, is, and will continue to be violated.

40

XI. The defendant(s) are guilty of violating plaintiffs 8th and 14th Amendment, which protects him from Cruel and Unusual Punishment (ie. Deliberate Indifference)

88. The 8th Amendment of the US Constitution, prohibits Cruel and Unusual Punishment (ie. Deliberate Indifference).

89. The defendants policies, procedures, and routine practices systematically violated the plaintiffs protected right(s). Such policies, procedures, and routine practices include, without limitation:
* Prolonged Solitary Confinement.
* Continuous violation of DC-ADM 802, Section(s) 2.A.; 2.C.; 2.D.; and Section(s) 3.A.; 3.B.
* The unavailable policy (ie. DC-ADM 6.5.1.) that supposedly governs placement in the STGMU.
* The denial and lack of a "Criteria and STG Validation Hearing" prior to STGMU Recommendation and Placement.
* The denial and lack of "proper" notice, review, and reason for STGMU Recommendation and Placement.
* Subjecting plaintiff to a Defacto punitive status (STGMU-Phase 5) and depriving him of his AC privileges.
* Routine housing into a "program" (STGMU) that is well known to be inactive, inoperative, and lacks programing.
* A Disciplinary system that denies the most minimum of rights and Due Process pursuant to the 14th Amendment.
* Continuous violation of DC-ADM 801, Section(s) 3.D.; 4.A.; and

41

Section(s) 6. A. and C.

- Continuious violation of DC-ADM 804, Section(s) 1. C.; 2. A.; and Section(s) 3. B.
- Failure to provide adequate Psychiatric and Psychological services to plaintiff, resulting in unnecessary pain and suffering.
- Failure to make available, maintain and utilize adequate Theraputic alternatives to the STGMU.

90. The defendant(s) knows or is Deliberately Indifferent to the fact the plaintiff was arbitrarily placed into the STGMU for an extended period of time, and that such placement created a substantial risk to his Mental and Physical Health. The defendants also knows or is Deliberately Indifferent to the fact that the Mental Health Treatment within the STGMU was inadequate, or non-existed. The impact of Long-Term Solitary Confinement (STGMU) has been brought to the defendants attention through numerous court(s) decisions, prisoner's grievances, 802 Appeals, Requests to Staff, Letters and other forms of communication with prisoner's rights advocacy organizations, and the like. Nonetheless, the defendants refuse to take reasonable steps to correct this systematic violation of the plaintiffs rights.

91. The defendants have acted, or failed to act, with Deliberate Indifference to the health and safety of the plaintiff. As a direct result of their acts and ommissions, the plaintiffs 8th and 14th Amendment has, is, and will continue to be violated.

42

XII   The defendant(s) are guilty of violating plaintiffs 1st, 8th, and 14th Amendment(s).

92. The 1st Amendment of the US Constitution, protects the free exercise of religion, freedom of speech, etc., and prohibits retaliation.

93. The defendants are guilty of retaliation and other 1st Amendment violations by: their acts and omissions of mail tampering, deprivation of exercise, showers, meals, medication, etc., and deprivation of visitation, phone calls, and other forms of communication with family and friends, denial of AC privileges, continued placement in long-term segregation and threats of other, and further forms of retaliation in response to the plaintiffs filing(s) of grievances and appeals. To be "free" from Cruel and Unusual Punishment is an implied promise and shall not be infringed upon, yet defendants deliberately ignore such protected right(s).

94. As a direct result of defendants retaliatory acts and omissions, the plaintiffs 1st, 8th and 14th Amendment has, is, and will continue to be violated.

43

**XIII.** The defendant(s) are guilty of Discrimination and failure to Accomodate in violation of the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA).

95. The ADA and RA, as applied to the states by the 8th and 14th Amendment(s), prohibits Discrimination and failure to Accomodate.

96. Both Title II of the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act (RA) requires "public entities," including prison(s), to provide, in all of their programs, services and activities, reasonable accomodations to individuals with disabilities.

97. The ADA and RA does not disappear when an inmate is placed in Solitary Confinement, regardless of the reason(s) for which he is placed there. At all times, plaintiff was rendered disabled, as defined by the ADA, due to his mental and physical impairments. Plaintiff could perform, participate, and enjoy certain functions, activities, programs, services, etc., with reasonable accomodations from the "PA. DOC." Instead of accommodating, the defendants subjected plaintiff to Differential Treatment and adverse actions, as outlined above in their abuse of the STGMU.

98. Plaintiff was continuously deprived of treatment services, programing, activities, groups, etc., while similarly situated non-disabled prisoner(s) are not subject to the same treatment/mistreatment. The PA. DOC allow and furnish (accomodate) similarly situated inmates access to said entitlements.

44

99. As a direct result of the "A.DOC" ADA and RA deprivation(s), the plaintiffs 8th and 14th Amendment(s) has, is, and will continue to be violated.

**XIV.** The defendants are guilty of Negligence and violating the plaintiffs 4th and 14th Amendments.

100. The 4th Amendment of the US Constitution prohibits the deprivation of persons property without Due Process, 14th Amendment.

101. The defendants are guilty of Negligence by: recklessly disregarding the safe, secure, care, custody, control and welfare of the plaintiff, while having dominion over his personal property (possessions). As a direct result, such was lost, stolen, or destroyed, resulting in the plaintiffs 4th and 14th Amendments being violated.

## Exhaustion of Administrative Remedies

102. Before resorting to litigation, plaintiff sought to put an end to the defendants systematic constitutional violations without judicial intervention. Plaintiff filed hundreds of documents, including DC-ADM 804 Grievances and DC-135 Request to Staff in an attempt to exhaust his Administrative Remedies, but received unfavorable responses of denials at all stages. Such filings were met with retaliation and further constitutional violations. The plaintiff has written and filed numerous appeals to the DOC Central office crying out for help but to no avail. Despite these efforts, the defendants continued in their unconstitutional policies and practices.

46

## Prayer for Relief

103. Wherefore, the plaintiff respectfully prays this Honorable Court will enter judgement:

• Granting the plaintiff a Declaration that the acts and omissions described herein violated his rights under the Constitution and Laws of the United States,

• Granting the plaintiff a Preliminary and Permanent Injunction ordering the defendants to cease in their practice(s) of implementing Long-term Segregation Units,

• Granting the plaintiff both Compensatory and Punitive Damages at $200,000 (Two Hundred Thousand) against each defendant, jointly and severally,

• Granting the plaintiff reasonable attorney fee(s), litigation expenses, and the recovery of all cost involved with the suit pursuant to 42 USC § 1988,

• the plaintiff also seeks a Jury Trial on all issues triable by jury, and any and all relief this court deems just, proper, and equitable

## Verification

104. I have prepared the forgoing Complaint and hereby certify that the matters alleged herein are true. I certify under the penalty of perjury that the forgoing is true.

47

# Certificate of Service

It is certified that the foregoing Amended Complaint is being mailed, using the US Postal Service, to:

Clerk of Court
US District Court
700 Grant St., Rm 3110
Pittsburg, PA. 15219

Respectfully Submitted,
Stephen Parker

Stephen Parker #GU-1465
SCI Dallas
1000 follies Rd
Dallas, PA. 18612

Dated: 1/28/24